UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Michael Gregory Glawe, | Case No. 22-cv-2423 (ECT/TNL) |
| Petitioner, | |
| v. | **REPORT & RECOMMENDATION** |
| Jarid Rardin,<br>Warden Federal Med. Center, | |
| Respondent. | |

Michael Gregory Glawe, Reg. No. 13203-029, FMC Rochester, P.O. Box 4000, Rochester, MN 55903 (pro se Petitioner); and

Ana H. Voss and Kristen Elise Rau, Assistant United States Attorneys, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for Respondent).

# I. INTRODUCTION

This matter comes before the Court on pro se Petitioner Michael Gregory Glawe's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition"), ECF No. 1, and Motion for Waiver of Administrative Remedies Due to Time Issues to File Under 28 U.S.C. § 2241 ("Waiver Motion"), ECF No. 2. This matter has been referred to the undersigned for a report and recommendation to the district court, the Honorable Eric C. Tostrud, District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1.

Based upon the record, memoranda, and proceedings herein, **IT IS HEREBY RECOMMENDED** that the Waiver Motion be **GRANTED**; the Petition be **DENIED**;

1

and this matter be **DISMISSED WITHOUT PREJUDICE**.

## II. BACKGROUND

In brief, the First Step Act of 2018 ("First Step Act"), Pub. L. 115-391, 132 Stat. 5194 (2018), "offers prisoners an opportunity to earn [t]ime [c]redits applicable to their periods of residential reentry center placement, home confinement or supervised release, by participating in certain evidence-based recidivism reduction . . . programs and productive activities." *Salter v. Fikes*, No. 20-cv-2253 (ECT/ECW), 2021 WL 2365041, at *1 (D. Minn. May 5, 2021) (quotation omitted), *report and recommendation accepted*, 2021 WL 2354934 (D. Minn. June 9, 2021); *see also, e.g.*, *Mills v. Starr*, No. 21-cv-1335 (SRN/BRT), 2022 WL 4084178, at *1, 4 (D. Minn. Aug. 17, 2022), *report and recommendation adopted*, 2022 WL 4080750 (D. Minn. Sept. 6, 2022).

Petitioner is currently serving a 151-month sentence. Ex. A to Decl. of Todd Valento, ECF No. 6-1 at 2. Petitioner's sentence also has 10-year term of supervised release. Ex. A to Valento Decl., ECF No. 6-1 at 2. Prior to the application of any such time credits, Petitioner had a projected release date of July 1, 2024 via good conduct time release. Ex. A to Valento Decl., ECF No. 6-1 at 2.

Based on the record before the Court, it appears that Petitioner was informed in or around the end of August 2022, that his "halfway house date would be 12-21-22." *See, e.g.*, Pet'r's Exs., ECF No. 1-1 at 2, 3. Petitioner sought clarification from the Federal Bureau of Prisons' ("BOP") staff regarding how this date was calculated in light of the BOP's referral for up to 270 days of "halfway house" placement and his then earned 280 days of First Step Act time credits, and tried to resolve the issue informally. Pet'r's Exs.,

ECF No. 1-1 at 2-3; *see* 28 C.F.R. § 542.13(a) ("[A]n inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy."). Petitioner also requested that he be put on federal location monitoring instead of placement at a halfway house. Pet'r's Exs., ECF No. 1-1 at 3.

When Petitioner did not receive a satisfactory answer as to how the time was being calculated, he subsequently submitted a request for administrative remedy to the BOP, using a BP-9 form. Pet'r's Exs., ECF No. 1-1 at 1; *see* 28 C.F.R. § 542.14(a) ("The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP-9), is 20 calendar days following the date on which the basis for the Request occurred."). Petitioner again sought clarification as to the intersection between the 270-day referral and the 280 days of First Step Act time credits. At the time the Petition was filed, Petitioner's administrative remedy request was still pending.

On September 30, 2022, Petitioner filed the instant Petition, asserting that the BOP has not properly applied time credits earned under the First Step Act. Petitioner asserts that the 280 days of time credits he has earned (as well as any additional time credits that have accrued since the time of filing) should be applied so as to move up the December 21 date. Pet., ECF No. 1 at 6-7. Petitioner requests that the BOP be ordered to properly apply his time credits and place him immediately in a halfway house or on federal location monitoring. Respondent Jarid Rardin asks that the Petition be dismissed because (1) the First Step Act time credits Petition has earned are reflected in his sentence

3

computation, rendering any request that such computation be updated to reflect those time credits moot; and (2) any request for immediate release based on those time credits is premature.[1]

### III. ANALYSIS

A writ of habeas corpus shall not extend to a prisoner unless "[h]e is in custody in violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "A petitioner may challenge the execution of his sentence through a § 2241 petition filed in the district where he is incarcerated." *Salter*, 2021 WL 2365041, at *2 (citing *Matheny v. Morrison*, 307 F.3d 709, 711 (8th Cir. 2002)). "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus . . . ." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam) (citing *Preiser*, 411 U.S. at 500)).

#### A. Exhaustion of Administrative Remedies

"A prisoner may bring a habeas action challenging the BOP's execution of his sentence only of if he first presents his claim to the BOP." *Mathena v. United States*, 577 F.3d 943, 946 (8th Cir. 2009); *accord Mills*, 2022 WL 4084178, at *2; *see also, e.g.*, *Salter*, 2021 WL 2365041, at *2 ("[A] petitioner ordinarily must exhaust all available remedies prior to seeking habeas relief.").

---

[1] Petitioner was given an opportunity to file a reply. ECF No. 4 at 2. As of this issuance of this Report & Recommendation, no reply has been filed.

Petitioner concedes that he has only started, but not completed, the BOP's administrative-remedy process. Waiver Mot., ECF No. 2 at 1; *see* Pet., ECF No. 1 at 2-3. Petitioner requests that he be excused from exhausting his administrative remedies due to the time it takes to complete the process, which, if his First Step Act claim has merit, would mean that he "would not be able to . . . use[]," i.e., benefit from, those time credits. Waiver Mot., ECF No. 2 at 1. Respondent did not respond to the Waiver Motion. Nor has Respondent argued that the Petition should be dismissed for failure to exhaust administrative remedies.

"[T]he exhaustion prerequisite for filing a 28 U.S.C. § 2241 petition is judicially created, not jurisdictional." *Lueth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007); *see also, e.g.*, *Salter*, 2021 WL 2365041, at *2; *Whentworth v. Fisher*, No. 10-cv-2270 (JNE/JSM), 2011 WL 5077612, at *5 (D. Minn. Oct. 7, 2011), *report and recommendation adopted*, 2011 WL 5078870 (D. Minn. Oct. 26, 2011). A court may, therefore, "exercise its discretion to decide a petition on its merits, even if a prisoner has not exhausted his administrative remedies." *Whentworth*, 2011 WL 5077612, at *5; *see also Salter*, 2021 WL 2365041, at *2 ("court may opt to address the merits of an unexhausted habeas claim"); *Gurzi v. Marques*, No. 18-cv-3104 (NEB/KMM), 2019 WL 6481212, at *2 (D. Minn. Oct. 10, 2019) ("[T]he Court observes that it has the authority to proceed to the merits of the case rather than rely on a failure to exhaust when appropriate."), *report and recommendation accepted*, 2019 WL 6464838 (D. Minn. Dec. 2, 2019).

This Court likewise "acknowledges the requirement that an inmate exhaust their

administrative remedies is an important one that serves valuable goals." *Mills*, 2022 WL 4084178, at *3. Ultimately, however, "the heart of [Petitioner's] claim presents a question of law: whether h[is] earned time credits under the First Step Act should be applied now or at the end of h[is] sentence." *Id.* The Court therefore recommends that Petitioner's failure to exhaust be excused and his Waiver Motion be granted.[2]

### B. First Step Act Claim

There is no dispute that Petitioner is eligible to earn time credits. Resp. at 10, ECF No. 5; Decl. of Todd Valento ¶ 4, ECF No. 6; Ex. A to Valento Decl., ECF No. 6-1 at 2. "Time credits earned . . . shall be applied toward time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C). "If the sentencing court included as a part of the prisoner's sentence a requirement that the prisoner be placed on a term of supervised release after imprisonment . . . , [the BOP] may transfer the prisoner to begin any such term of supervised release at an earlier date, *not to exceed 12 months*, based on the application of time credits." *Id.* § 3624(g)(3) (emphasis added); *see also* 28 C.F.R. § 523.44(d)(3) ("The application of FSA Time Credits would result in transfer to supervised release no earlier than 12 months before the date that transfer to supervised release would otherwise have occurred."). "Early transfer to supervised release effectively reduces an inmate's sentence by, at max, one year." *Mills*, 2022 WL 4084178, at *4; *see also, e.g.*, *Roberts v. Cox*, No. 4:20-CV-04187-KES, 2022 WL 742489, at *2 (D. S.D. Mar. 11, 2022) ("Further, the BOP cannot grant an inmate more

---

[2] Nothing about the Court's recommendation should be read as excusing Petitioner from exhausting any applicable administrative remedies in the future.

than twelve months of supervised release for earned time credits under the First Step Act." (citing 18 U.S.C. § 3624(g)(3))).

Additionally, "[u]nder the First Step Act, an inmate is only eligible to have their time credits applied if they meet certain criteria under 18 U.S.C. § 3624(g)." *Mills*, 2022 WL 4084178, at *4. "That criteria includes having accumulated time credits in an amount that is equal to the remainder of [the inmate's] imposed term of imprisonment . . . ." *Id.*; *see also* 18 U.S.C. § 3624(g)(1)(A) (eligibility requirement that prisoner "has earned time credits . . . in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment"); 28 C.F.R. § 523.44(b)(1) (time credits may be applied toward prerelease custody or early transfer to supervise release if eligible inmate has "[e]arned FSA Time Credits in an amount that is equal to the remainder of the inmate's imposed term of imprisonment"). "In other words, the First Step Act provides that a prisoner is eligible to have earned time credits applied for supervised release or prelease custody only when []he has earned time credits that equal the remainder of h[is] sentence." *Mills*, 2022 WL 4084178, at *4; *see Adkins v. Engleman*, No. CV 22-1988 JLS (MRW), 2022 WL 14966123, at *2 (C.D. Cal. Sept. 8, 2022) ("Federal courts around the country read Section 3624(g)(1)(A) to mean that the BOP is permitted to apply time credits *only* once an inmate has earned enough that equal the remainder of her sentence." (quotation omitted)), *report and recommendation accepted*, 2022 WL 15116425 (C.D. Cal. Oct. 24, 2022); *see also, e.g.*, *Lallave v. Martinez*, No. 22-CV-791 (NGG) (RLM), ___ F. Supp. 3d ___, 2022 WL 2338896, at *11 (E.D. N.Y. June 28, 2022); *Turner v. Heisner*, No. CV 22-00178-PHX-JAT (ESW), 2022 WL 2195348, at *3 (D. Ariz. May

7

16, 2022), *report and recommendation accepted sub nom.*, *Turner v. Cole*, 2022 WL 2192212 (D. Ariz. June 17, 2022); *Milchin v. Warden*, No. 3:22-cv-195 (KAD), 2022 WL 1658836, at *3 (D. Conn. May 25, 2022); *cf. Mark v. Birkholz*, No. 21-cv-1418 (KMM/DTS), 2022 WL 11321123, at *1-2 (D. Minn. Aug. 4, 2022), *dismissed as moot*, 2022 WL 11227141 (D. Minn. Oct. 19, 2022).

1. **Time Credits Reflected in Sentence Calculation**

Petitioner asserts that his time credits are not properly reflected in his sentence computation. Respondent asserts that any request by Petitioner to have his sentence computation adjusted to account for earned time credits is moot "because his sentence computation has been updated and reflects that he has earned 365 days of [time credits] as of October 4, 2022." Resp. at 13.

Respondent has submitted the declaration of the unit manager of the facility at which Petitioner is currently detained. *See generally* Valento Decl. Attached to this declaration is Petitioner's "Public Information Inmate Data" as of October 4, 2022. Valento Decl. ¶ 3; *see generally* Ex. A to Valento Decl., ECF No. 6-1. The "Public Information Inmate Data" for Petitioner shows that his projected release date with good conduct time was July 1, 2024. Ex. A to Valento Decl., ECF No. 6-1 at 2, 3. The "Public Information Inmate Data" also shows that Petitioner has 365 days of time credits. Ex. A to Valento Decl., ECF No. 6-1 at 2, 3.

Recall that Petitioner has a term of supervised release imposed as part of his sentence and that § 3624(g)(3) states that time credits may be used to transfer a prisoner to supervised release at an earlier date by no more than 12 months. Petitioner's "Public

Information Inmate Data" shows that the BOP incorporated the 365 days of time credits under the First Step Act into his sentence computation, resulting in a projected release date of July 2, 2023 via the First Step Act. Ex. A to Valento Decl., ECF No. 6-1 at 2, 3. The BOP's online, public inmate locator similarly reflects a July 2, 2023 release date for Petitioner. *See Find an inmate.*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (searching by inmate name or BOP register number).

The Court can no longer order Petitioner's sentence computation to be updated to reflect his time credits earned under the First Step Act because the BOP has already updated that computation to reflect the maximum of 12 months in time credits that § 3624(g)(3) states may be used to begin supervised release at an earlier date. *See Mills*, 2022 WL 4084178, at *4; *Roberts*, 2022 WL 742489, at *2. And, for the reasons discussed in the following section, Petitioner has now received the relief sought—"to credit the time that is owed to [him]"—to the extent such relief can be provided to him at present. Pet., ECF No. 1 at 8; *see Ali v. Cangemi*, 419 F.3d 722, 723-24 (8th Cir. 2005). Therefore, Petitioner's request that his sentence computation be adjusted to reflect his time credits under the First Step Act is moot. *See Ali*, 419 F.3d at 724.

**2. Immediate Release**

Respondent contends that Petitioner's request for the immediate application of his earned time credits under the First Step Act is "premature," "hypothetical," and "speculative" because he has not earned enough credits to equal the remainder of his term of imprisonment. Resp. at 13, 14, 15. According to Respondent:

> The First Step Act explicitly limits [Petitioner's]

9

> ability to apply his [time credits] until the number of his [time credits] is equal to the remainder of his term of imprisonment. *See* 18 U.S.C. § 3624(g)(1)(A). As of October 4, 2022, [Petitioner] has earned 365 days of [time credits]. *See* Valento Decl. ¶ 11[;] Ex. A [to Valento Decl., ECF No. 6-1] at 3. With his 365 [time credits] included, his sentence computation indicates he is currently not projected to be released from BOP custody until July 2, 2023. *See* Valento ¶ 11[;] Ex. A [to Valento Decl., ECF No. 6-1] at 1, 3. When his total [time credits] equal the remainder of time on his sentence, the BOP will determine if [Petitioner] meets the criteria to transfer to a pre-release [residential reentry center] or home confinement placement or to receive an early release. *See* 18 U.S.C. § 3632(d)(4)(C); *see also* 18 U.S.C. § 3624(g).
>   The [time credits Petitioner] has earned and continues to earn could afford him additional time in pre-release custody and potentially advance his release date by a maximum of 365 days. *See* 18 U.S.C. § 3624(g)(2)-(3). But the [time credits] he has earned to date cannot be applied at this time because they do not equal the remainder of his term of imprisonment.

Resp. at 14-15.

Respondent is correct that Petitioner must have earned enough time credits to equal the remainder of his term of imprisonment before such credits may be applied. 18 U.S.C. § 3624(g)(1)(A); 28 C.F.R. § 523.44(b)(1); *see, e.g.*, *Adkins*, 2022 WL 14966123, at *2; *Mills*, 2022 WL 4084178, at *4; *Lallave*, 2022 WL 2338896, at *11; *Turner*, 2022 WL 2195348, at *3; *Milchin*, 2022 WL 1658836, at *3. Using November 1, 2022, as a simplified measuring point, Petitioner has approximately 608 days left on his sentence, measured from November 1 to his original July 1, 2024 good-conduct-release date. It is undisputed that, as of October 4, 2022, Petitioner had 365 days of earned time credits. Assuming for sake of argument that Petitioner earned an additional day of time credit each day going forward, Petitioner would need approximately 122 days of additional time

credits before his balance of earned time credits equaled the remainder of his sentence. Again, assuming for purposes of this example only that every calendar day equaled an additional day of time credit, it would take until approximately February 3, 2023, for Petitioner to earn enough time credits for his balance of time credits to equal the remainder of his sentence. Thus, even assuming Petitioner has continuously been earning time credits at the hypothetical rate of one time credit per day since October 4, he still would not have earned sufficient credits to be eligible to have those credits applied under the First Step Act.

Courts have explained that this "statutory requirement has a commonsense basis." *Adkins*, 2022 WL 14966123, at *2. Time credits may be lost, such as through disciplinary infractions. *Milchin*, 2022 WL 1658836, at *3; *Workman v. Cox*, No. 4:20-CV-04197-LLP, 2021 WL 1080396, at *3 (D. S.D. Jan. 13, 2021), *report and recommendation adopted*, 2021 WL 1060205 (D. S.D. Mar. 18, 2021); *see also, e.g.*, *Adkins*, 2022 WL 14966123, at *2; *Mills*, 2022 WL 4084178, at *4 n.5; *Mark*, 2022 WL 11321123, at *2; *Lallave*, 2022 WL 2338896, at *11; *see generally* 18 U.S.C. § 3632(e); 28 C.F.R. §§ 523.43, 541.3. When earned time credits equal the remainder of a prisoner's sentence, they "can be immediately applied and would no longer be subject to loss for future prohibited acts." *Milchin*, 2022 WL 1658836, at *3; *accord Adkins*, 2022 WL 14966123, at *2; *Mills*, 2022 WL 4084178, at *4 n.5. Similarly, while Petitioner has been assessed as a minimum[3] risk of recidivism, Ex. B to Valento Decl., ECF No. 6-2 at

---

[3] Citing to the Valento Declaration, Respondent states that Petitioner "has been assigned a Low PATTERN score since his first assessment in November 2019." Resp. at 10; *see* Valento Decl. ¶ 5 (Petitioner "has been assigned a Low on the PATTERN Risk Tool since his first assessment in November 2019."). While Petitioner was assessed as

11

1 (current assessment as of July 17, 2022 is "minimum risk recidivism level"), it is possible that he could be assessed differently in the future, "impacting [Petitioner's] ability to apply the time credits." *Mills*, 2022 WL 4084178, at *4 n.5 (citing 18 U.S.C. § 3624(g)(1)(B), (D)(ii)); *see Mark*, 2022 WL 11321123, at *2.

Because Petitioner's earned time credits do not yet equal the remainder of his sentence, the Court agrees with Respondent that it would be premature "to direct the BOP to adjudicate the credits at this time." *Lallave*, 2022 WL 2338896, at *11; *see Adkins*, 2022 WL 14966123, at *2 ("A prisoner who makes a premature request for calculation of credits in a habeas action, then, is essentially seeking an advisory opinion from this court about how many s/he has earned from [First Step Act] programs. Courts regularly hold that such a claim for relief is not ripe for judicial consideration." (quotation and citation omitted)). As best as this Court is able to tell, Petitioner's request for immediate release was based on his understanding that any earned time credits under the First Step Act would move up the apparent December 21[4] halfway-house date he had previously been given by the BOP. Because Petitioner's "request for all h[is] time credits to be applied to h[is] sentence now such that h[is] release date will be moved up is premature, . . . any habeas relief is unwarranted at this time." *Mills*, 2022 WL 4084178, at *4 (footnote omitted); *see also, e.g.*, *Adkins*, 2022 WL 14966123, at *2; *Lallave*, 2022 WL 2338896, at *11; *Milchin*, 2022 WL 1658836, at *3; *cf. Mark*, 2022 WL 11321123, at *3.

---

being a low risk of recidivism from the time of his first assessment in November 2019 through approximately the end of April 2021, since that time he has continuously been assessed as a *minimum* risk of recidivism. *Compare* Ex. B to Valento Decl., ECF No. 6-2 at 2 ("low risk recidivism level" between November 19, 2019 and April 28, 2021) *with* Ex. B to Valento Decl., ECF No. 6-2 at 1-2 ("minimum risk recidivism level" from April 28, 2021 to present).
[4] Respondent has not addressed this date and the Court has no information about it other than Petitioner's statements in the Petition and communications in connection with his efforts to exhaust his administrative remedies.

A final point: Respondent asserts that when Petitioner's balance of earned time credits equals the remainder of his sentence, the BOP will then determine if he meets the criteria for prerelease confinement (whether that be home confinement or a residential reentry center), *see* 18 U.S.C. § 3624(g)(2) (types of prerelease custody), or early release, *see* 18 U.S.C. § 3624(g)(3) (supervised release). As stated above, it appears that Petitioner has already been evaluated for prerelease custody, albeit on a basis other than the First Step Act, and received a referral for up to 270 days. *See* 18 U.S.C. § 3624(c)(1) (BOP "shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community"). Petitioner also appears to have been given a placement date of December 21.

The Court appreciates that the understandable confusion in this case seems to stem at least in part from the interplay between Petitioner's time credits under the First Step Act and this other prerelease custody Petitioner was recommended to receive. *See, e.g.*, Pet'r's Exs., ECF No. 1-1 at 2 ("You were referred for up to 270 days and then we specifically stated in the referral you also have 280 days of FTC to be added to the 270 days."). Respondent and the BOP have done little to clarify this interplay for Petitioner and the Court.

Nothing about the Court's recommendation as to the denial of Petitioner's First Step Act claim should be read to alter any other prerelease custody Petitioner may be slated to receive. The Court's recommendation is limited to a conclusion that Petitioner

may not have his earned time credits applied to move up the December 21 date on the basis of the First Step Act because he has not yet reached § 3624(g)(1)(A)'s eligibility requirement that "earned time credits . . . [be] in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment." *See also* 28 C.F.R. § 523.44(b)(1).

### 3. Federal Location Monitoring

Because the Court has concluded that Petitioner is not entitled to immediate placement under the First Step Act, it could exercise its discretion not to address Petitioner's request that the Court direct the BOP to place him on federal location monitoring as opposed to placement in a residential reentry center. In the interests of completeness and justice, however, the Court will address this issue briefly.

Federal law provides that the BOP "shall designate the place of the prisoner's imprisonment." 18 U.S.C. § 3621(b); *see, e.g.*, *O'Hara v. Rios*, No. 08-cv-5160 (JRT/JJK), 2009 WL 3164724, at *1 (D. Minn. Sept. 28, 2009) ("18 U.S.C. § 3621(b) affords the BOP the authority to designate an inmate's place of imprisonment."). Section 3621 "grants authority to the BOP to designate the place of the prisoner's imprisonment that the Bureau determines to be appropriate and suitable considering a broad range of criteria including, for example, the history and characteristics of the prisoner." *O'Hara*, 2009 WL 3164724, at *5; *see United States v. Kluge*, No. 17-cr-61 (DWF), 2020 WL 209287, at *3 (D. Minn. Jan. 14, 2020) ("Section 601 of the [First Step Act] amended 18 U.S.C. § 3621(b) so that it now requires the BOP to take several listed factors into consideration when designating placement, including placing inmates in facilities within 500 driving miles of their primary residence 'to the extent practicable,' but § 601 did not

change the language providing that the BOP decides placement." (citing 18 U.S.C. § 3621(b)). This includes designating prerelease custody placement. 28 C.F.R. § 570.22 ("Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community . . . ."); *see also* 18 U.S.C. § 3624(c)(4) ("Nothing in this subsection shall be construed to limit or restrict the authority of the [BOP] under section 3621."); *see, e.g.*, *Anderson v. Birkholz*, No. 21-cv-1420 (SRN/TNL), 2021 WL 3173641, at *1-2 (D. Minn. July 27, 2021); *United States v. Johnson*, No. 14-cr-159 (DWF/TNL), 2021 WL 1550460, at *2 (D. Minn. Apr. 20, 2021); *United States v. Brown*, No. 12-cr-172(3) (SRN), 2020 WL 1922567, at *2 (D. Minn. Apr. 21, 2020); *Kluge*, 2020 WL 209287, at *2, 3. "There is no question that § 3621(b) provides the BOP with broad discretion to choose the location of an inmate's imprisonment." *Fults v. Sanders*, 442 F.3d 1088, 1090 (8th Cir. 2006).

"[T]he BOP has exclusive authority to determine the placement of prisoners." *Brown*, 2020 WL 1922567, at *2; *accord Johnson*, 2021 WL 1550460, at *2; *see* 18 U.S.C. § 3621(b) ("[A] designation of a place of imprisonment . . . is not reviewable by any court."). "Courts have consistently held that placement questions are not reviewable." *Johnson*, 2021 WL 1550460, at *2 (citing cases); *cf.* 18 U.S.C. § 3624(c)(4). "It is also well-established that prisoners do not have a constitutional right to placement in a particular facility or place of confinement." *United States v. James*, No. 15-cr-255 (SRN), 2020 WL 1922568, at *2 (D. Minn. Apr. 21, 2020); *accord*

15

*Johnson*, 2021 WL 1550460, at *2; *Brown*, 2020 WL 1922567, at *3.

Because prerelease-custody placement decisions are solely within the discretion of the BOP, this Court lacks the authority to consider Petitioner's request that he be placed on federal location monitoring.

## IV. RECOMMENDATION

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Motion for Waiver of Administrative Remedies Due to Time Issues to File Under 28 U.S.C. § 2241, ECF No. 2, be **GRANTED**.

2. Petitioner's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241, ECF No. 1, be **DENIED**.

3. This matter be **DISMISSED WITHOUT PREJUDICE**.

Date: November  10  , 2022

        *s/ Tony N. Leung*
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*Glawe v. Rardin*
Case No. 22-cv-2423 (ECT/TNL)

## NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).